UNITED STATES (McKEE v.). See Case No. 8,850.

---

## Case No. 15,690.

### UNITED STATES v. MACKENZIE et al.

[1 N. Y. Leg. Obs. 227.]

District Court, S. D. New York. Jan. 10, 1843.

MURDER ON HIGH SEAS — MOTION FOR WARRANT OF ARREST—NAVAL COURT MARTIAL.

Where parties are charged with having committed the crime of murder on the high seas, and an investigation, in a regularly organized court of inquiry, is instituted by the secretary of the navy, the United States district court will not grant a warrant to arrest the parties so charged, pending such proceedings.

This was an application by Mr. J. B. Scholes, on behalf of Margaret E. Cromwell, widow of Samuel Cromwell, for a warrant to apprehend Commander [Alexander S.] Mackenzie and Lieutenant [Guert] Gansevoort, charged with the wilful murder of the said Samuel Cromwell. The learned counsel made this application on affidavits.

BETTS, District Judge. Two affidavits were presented me yesterday afternoon, and an application founded on them was made by counsel, for a warrant to arrest Alexander Slidell Mackenzie and Guert Gansevoort, for murder committed on the high seas. The affidavit of Margaret E. Cromwell states, that she is the widow of Samuel Cromwell, and charges, that she is informed and believes her husband was put to death the

first day of December last, at sea, on board the United States brig Somers, by order of Mackenzie, and that Gansevoort aided, abetted, and assisted in the said killing; that he was put to death without the form or semblance of a trial, and without the least legal evidence of the guilt or misconduct of said Cromwell. She further states, that she is informed and believes, that said Cromwell was put in irons on board the said brig the 27th day of November, and remained thus confined until the first day of December, and when within two or three days' sail of the Island of St. Thomas, he was, by order of the accused, deliberately put to death by hanging at the yard-arm of said brig. The other deposition, made by Charles Cleveland, alleges, that he was present on board the U. S. ship North Carolina, and on or about the 29th day of December last, heard a report or written statement read, and also heard Mackenzie, the accused, admit it was made by him; and in that statement Mackenzie admitted, he did deliberately put to death Samuel Cromwell, by hanging him at the yard-arm on board the U. S. brig Somers, on the high seas, on the first day of December last; and also, that the deponent heard Gansevoort, the other party accused, acknowledge, that he aided and abetted Mackenzie in the said act. The counsel also submitted a published report of the statement of Mackenzie, and the proceedings thereupon, referring to that as evidence of his admission and the manner in which it was made.

It is first to be remarked, in respect to this proceeding, that it is not conducted in the method usually employed in criminal accusations in this district. The district attorney is the official representative of the government in criminal prosecutions. [Levy Court of Washington v. Ringgold] 5 Pet. [30 U. S.] 451. And it can rarely happen that a magistrate will feel bound to investigate charges which have been made known to the district attorney, and which he then declines to prosecute or countenance. It by no means follows, that the unwillingness or refusal of that officer to institute a criminal prosecution, will debar a judge or magistrate investigating charges which come before them properly authenticated, or will control them in the exercise of a full discretion in the matter; but it is found most conducive to the orderly administration of justice, to the protection of the citizen, and the vindication of the laws, in the discovery and punishment of public offenders. to leave to the officer of the law, charged with this duty, to collect proofs, inquire whether there is a probable case of any offence against the laws. and prepare the charges to be presented before the examining magistrate. It is not concealed, that in this case, the district attorney, or the gentleman conducting the business of his office. in his absence on other official duties, both declines to act in this

accusation, and discountenances its prosecution at the present time, and in this form.

We are, then, brought to consider the case as it now stands and decide, whether the facts stated, are of a nature to demand the arrest of those parties on this capital charge. It is to be premised, that it is not the duty of a magistrate, upon the mere assertion, upon oath, that a crime has been committed, to issue a warrant or take cognizance of the subject. There must be first laid before him a statement of facts, verified by oath, which, if true, either proves that an offence has been committed, or raises a strong presumption that it is so. 1 Chit. Cr. Law, 12; 1 Hale, P. C. 580; 2 Hale, P. C. 107, 110. If he may be protected in acting on a well-founded suspicion, it is clear, upon the principle of the authorities, that he is not bound to proceed on such evidence at common law, unless, perhaps, in the case of a suspicion founded on his personal knowledge of facts. 1 Chit. Cr. Law, 10, 11. And under the 6th amendment of the United States constitution it is at least doubtful, whether he can act until a probable cause is first established to his satisfaction by oath. The witnesses, who have given their depositions in this case, know no fact or circumstances implicating these parties, and claim to support the proceedings asked for upon the open and notorious declarations and averments of the accused. I am, accordingly, bound to regard these declarations and the concomitant circumstances, as the sole evidence offered to support the accusation, and justify the award of a warrant of arrest.

It appears upon this proof, that the accused, being officers in command of the U. S. brig Somers, arrested Cromwell on a charge of a mutinous conspiracy with others of the crew, to murder the officers, and piratically possess themselves of the vessel, her armament and stores; that after detaining him in confinement from the 27th of November to the 1st of December, they ordered him put to death under apprehension of his rescue by his confederates, and in the belief that there was no other means of saving the ship and the lives of the officers. Setting up an accusation of this character against the deceased, under whatever solemnity of asseveration, most certainly can be received as a justification for employing the last extreme of power by the accused. The watchful solicitude of the law over life and personal security, cannot be so quieted or satisfied. The necessity of the case must be made apparent beyond any fair ground to doubt, before any functionary, under whatever plenitude of power, can, on his own mandate, take the life of a citizen. Public sensibility is in no respect in advance of the activity and vigor of the law in vindicating and protecting life and personal liberty from injuries not well warranted and excused by the exigencies under which they were inflicted. Yet, it by no means follows,

that the investigation of this grave and exciting subject, devolves upon the civil authorities, or that the commission of an offence at places or by persons within the jurisdiction of courts of law, necessarily imposes on them the duty of inquiry or punishment. It is not intended, however, to go into this topic farther than to consider whether the facts and circumstances now laid before me, impose a necessity on me, as a civil magistrate, to cause the accused to be arrested, and then to proceed and investigate the charges. The act of Sept. 24th, 1789, § 33 [1 Stat. 91], empowers the arrest of offenders for any crime against the United States, agreeably to the usual mode of process in the state where the offender may be found, and authorizes the proceedings to be had before any justice or judge of the United States, or justice of the peace, or other magistrate of the state, and a recent act extends the authority to commissioners appointed by the circuit court to take affidavit and bail. Act Aug. 23, 1842 [5 Stat. 516]. But, though the mode of proceeding be the same as under the state laws, the United States courts can take no cognizance of any matter not specifically declared to be a crime or offence by act of congress, and accordingly cannot inquire into violations of the common law, or law of nations, committed on land or at sea, without the act is prohibited and punished by express statutory provisions. U. S. v. Hudson, 7 Cranch [11 U. S.] 32; U. S. v. Wiltberger, 5 Wheat. [18 U. S.] 76; U. S. v. Bevans, 3 Wheat. [16 U. S.] 336. The crimes act of 1790, § 8 [1 Stat. 114], renders it a capital offence for any person upon the high seas to commit murder, and declares that the trial of crimes committed on the high seas, &c., shall be in the district where the offender is apprehended, or into which he may be first brought. The act of 1825 (chapter 276, § 4) declares, that if any person upon the high seas, &c., shall commit wilful murder, he shall, upon conviction thereof, suffer death. The language of these enactments is sufficiently comprehensive to embrace offences committed on board the armed vessels of the United States, and the argument upon which the interposition of the civil courts is invoked in this instance, assumes that congress designed to have the criminal jurisprudence of the country, exercised in all cases in conformity to the provisions of the 5th and 6th amendments to the constitution, by presentment and jury trial. But it is to be observed, that the 5th amendment confers full power on congress to legislate over offences in the navy, and army, and militia, in actual service, without such restriction. The 5th article is, "no person shall be held to answer for a capital or otherwise infamous crime, unless or presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or

public danger." Without pausing to consider whether any one other than the party accused or to be tried can take advantage of this constitutional limitation, and compel the trial to be had in courts of law, when the party proceeded against, does not claim it or object to a different tribunal, it is sufficient to say, that this clause of the constitution distinctly separates offences, on land or at sea; committed in the army or navy, from crimes in general, and in connection with the express power to make rules for the government of land and naval forces, leaves to congress power to legislate with broader discretion over that portion of the public, subject to its authority. It is in this sense the provision is understood by our ablest commentators (3 Story, Cr. Law, 79, 656), and by the supreme court ([U. S. v. Bevans] 3 Wheat. [16 U. S.] 336; [U. S. v. Crosby] 7 Cranch [11 U. S.] 116). Congress has exercised this power distinctly, and by the act for the better government of the navy, passed April 23, 1800, art. 21 [1 Stat. 48], has declared, "that the crime of murder, committed by any officer, &c., belonging to any public vessel of the United States, without the territorial jurisdiction of the United States, may be punished with death by the sentence of a court martial." A very eminent attorney general of the United States gave it as his opinion, in 1812, that a naval court martial ought not to try and punish a murder committed on board a United States frigate at Norfolk, but that jurisdiction in the case belongs to the ordinary civil tribunal. (Attorney General Pinckney.) Op. Attys. Gen. p. 114. So far as that opinion might indicate that jurisdiction in this case belonged to the United States courts of judicature, it is contravened by the judgment of the supreme court in 1818, that court intimating a strong opinion that the crimes act of 1790, § 8, did not embrace offences committed on board the public ships of the United States. [U. S. v. Bevans] 3 Wheat. [16 U. S.] 391.

The crimes act of 1825, § 4 [4 Stat. 115], reiterates the language of that of 1790 in this respect, and it is accordingly a point of great doubt, under the construction given by the supreme court, whether it would interfere with the legislation then in force by the act of 1800 in respect to the navy. This doubt is rather strengthened than removed by an after enactment in the act of 1825. Section 11 renders it a capital offence wilfully to burn, or to set fire with intent to burn, any public vessel of the United States, afloat, &c., and then adds the proviso, "that nothing herein contained shall be construed to take away or impair the right of any court martial to punish any offence which, by the law of the United States, may be punishable by such court." If the act of 1825 may be regarded as giving the civil courts concurrent jurisdiction with courts martial over offences committed on board ships of war,

this proviso very distinctly indicates the intent of congress, that the power then existing in courts martial was not to be abrogated or suspended; and it would result that it did not impose on the civil courts the necessity of exercising the jurisdiction as the only means of enforcing the law and securing or punishing offenders.

But supposing all reasonable grounds of doubt are removed, and it is demonstrated that the courts of civil jurisdiction are to take cognizance of this matter, the question yet remains, whether the subject is now brought before me in such posture, and under such a state of facts, as would render it a judicious exercise of discretion to interpose and arrest the parties. Looking at the papers laid before me as the basis of this proceeding, I find a regularly organized court of inquiry, instituted by the secretary of the navy, now sitting and investigating this very matter. The United States law officer of this district is assigned as the judge advocate of that tribunal, and the declaration of Lieutenant Gansevoort, on which his arrest is demanded, was made in the testimony given by him before that court. The report, or written statement of Commander Mackenzie, employed as evidence on this proceeding, was a paper submitted to that court for its examination and action. That court is still diligently engaged in the examination of witnesses upon this very subject matter, and it is most manifest from these papers, that a rightful and full understanding of the charges preferred by these depositions against Mackenzie and Gansevoort, cannot be had by me, without calling the same witnesses before me, and going over the same ground of examination now pursued by the court of inquiry. Nor can a step be taken by the civil authority in this behalf, without at once arresting and suspending the action of the naval court of inquiry. The second section of the act of congress, April 23, 1800, art. 1 [2 Stat. 51], expressly empowers the secretary of the navy to convene such court of inquiry, and prescribes to the members and judge advocate a solemn oath of office. It should therefore be a case of most imperious exigency that would induce any single magistrate to take from such tribunal the subject matter submitted to its investigation, and assume to himself the entire cognizance and disposition of it. There is no fact, submitted to me, indicating any necessity for such procedure. It is not proved that there is the slightest suspicion, that the officers accused will flee a full and searching investigation of their conduct, nor but that they are now under competent control by authority of the president of the United States, to be brought to answer before the proper tribunals, for any violation of the law, committed by them in this most solemn and melancholy transaction. It would be most unusual, if not indiscreet, while the head of the government

is pursuing this investigation in respect to the conduct of the officers of the navy in the exercise of their command, for a single magistrate to intervene, and by his warrant to change the whole course of procedure, and attempt to establish a paramount jurisdiction in himself over a case where at least there is color of authority to support the method pursued by the government. These considerations satisfy my judgment, that the proofs submitted to me do not establish a case, in which a judicial necessity is imposed on me to take cognizance of the complaint, and I therefore decline granting the warrant prayed for, to arrest Alexander Slidell Mackenzie and Guert Gansevoort, for the crime of murder.

[See U. S. v. Mackenzie, Append. Fed. Cas.]